IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KELLI DART, | Civ. No. 6:23-cv-01676-AA |
| Plaintiff, | **FINDINGS OF FACT & CONCLUSIONS OF LAW** |
| v. | |
| WILLAMETTE VITAL HEALTH INC.; DR. NANCY BOUTIN, | |
| Defendants. | |

AIKEN, District Judge.

This case comes before the Court on an unopposed Motion for Findings of Fact and Conclusions of Law filed by Defendants Willamette Vital Health, Inc. and Dr. Nancy Boutin. ECF No. 13. The motion is GRANTED and the Court's Findings of Fact and Conclusions of Law follow.

## DISCUSSION

The parties have reached a settlement in this matter and request that the Court issue Findings of Fact and Conclusions of Law concerning the allocation of the proceeds of the settlement funds between Plaintiff's economic and non-economic losses.

I.  **Conclusions of Law**

"Economic damages are objectively verifiable monetary losses, including . . . loss of income and past and future impairment of earning capacity," while "[n]oneconomic damages are subjective, nonmonetary losses, including pain, mental suffering, emotional distress, [and] humiliation . . ." *Huskey v. Dep't of Corr.*, 329 Or. App. 397, 399 (2023) (internal quotation marks and citations omitted, alterations normalized).

How settlement proceeds are categorized has tax implications, depending on whether the proceeds are allocated as economic damages in the form of wages or as non-economic damages. Def. Mot. Ex. 1. The IRS is not bound by the parties' determination in settlement of how the proceeds should be allocated.

The Court therefore concludes that a judicial determination is required to allocate the settlement proceeds between economic damages and non-economic damages so that the parties can make appropriate tax arrangements.

II.  **Findings of Fact**

Plaintiff Kelli Dart was hired by Defendant Willamette Vital Health Inc. ("WVH") as an Admission Liaison in 2013. Dart Decl. ¶ 5. ECF No. 17. Plaintiff had previously volunteered at WVH beginning in 2011. *Id.* at ¶ 4.

Plaintiff's hours were reduced in 2019 and had to find another job in order to maintain full time work and benefits. Dart Decl. ¶ 6. Plaintiff wished to return to work at WVH, however, and watched for openings for full time positions at WVH. *Id.* In 2020, a full-time position came available with WVH as a Palliative Care

Coordinator and Plaintiff was hired. *Id*. Defendant Dr. Boutin was Plaintiff's supervisor. *Id*. The COVID-19 pandemic began shortly after Plaintiff resumed working for WVH. *Id*.

During the COVID-19 pandemic, Plaintiff complied with all requirements concerning protective equipment and temperature monitoring and continued to work in the office. Dart Decl. ¶¶ 7-8.

Plaintiff's religious convictions did not permit her to receive the COVID-19 vaccine and so she declined to receive it. Dart Decl. ¶ 11. Plaintiff's supervisor was aware that Plaintiff was not vaccinated. *Id*. at ¶ 12. Plaintiff was not permitted to do home visits because she was not vaccinated but took on other responsibilities to compensate. *Id*. at ¶¶ 14-15.

Plaintiff's supervisors told her that she needed to be vaccinated by a specific deadline or she would be terminated from her employment. Dart Decl. ¶ 16. Plaintiff declined to be vaccinated because of her religious principles. *Id*. at ¶ 17. Management, including Dr. Boutin, pressured Plaintiff to get vaccinated against COVID-19. *Id*. at ¶¶ 18-19. Eventually, Plaintiff was required to work from home because she was unvaccinated. *Id*. at ¶ 20.

Plaintiff submitted a religious exemption request ahead of the vaccination deadline, which was accepted by her employer. Dart Decl. ¶ 21. Plaintiff was told that she would not be terminated, but a few months later she was terminated for not being vaccinated. *Id*. Plaintiff subsequently found other employment, which offered

higher wages, but Plaintiff does not find the same satisfaction in her work that she experienced with WVH. *Id.* at ¶ 25.

The experience of being pressured to receive the vaccine and then being terminated from WVH was humiliating and emotionally traumatic for Plaintiff. *See, e.g.*, Dart Decl. ¶¶ 13, 18-19, 22-24, 26.

Plaintiff commenced this litigation, and the parties eventually reached an agreement to settle for $24,000. Dart Decl. ¶ 27. The parties agreed that half of her settlement funds would account for her lost wages and half of her settlement funds would account for pain and suffering. *Id.*

The Court finds, based on the record before it, that half of the settlement funds are economic damages attributable to lost wages and half of the settlement funds are non-economic damages attributable to Plaintiff's pain, mental suffering, and humiliation. The parties have represented to the Court that Plaintiff's counsel will not be taking a fee from the settlement proceeds, Def. Mot. 4, and so there is no need for the Court to account for attorney fees.

## CONCLUSION

For the reasons set forth above, the Court concludes that a judicial determination is required to allocate the settlement proceeds in this case between economic damages in the form of lost wages and non-economic damages in the form of compensation for pain, mental suffering, and humiliation. Defendant's Motion for Findings of Fact and Conclusions of Law, ECF No. 13, is GRANTED. The Court finds, based on the record, that the proceeds are to be allocated evenly, with half of the

settlement proceeds attributable to economic damages in the form of lost wages and the other half of the proceeds attributable to non-economic damages for pain, mental suffering, and humiliation.

It is so ORDERED and DATED this   8th   day of October 2024.

                    /s/Ann Aiken
                    ANN AIKEN
                    United States District Judge